UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
SOLOMON SHARBAT,
SOLOMON CAPITAL, LLC,                                          Docket No. 1:10-cv-06455-SAS
SOLOMON CAPITAL 401(k) TRUST,
SOLOMON SHARBAT, as Trustee of the
SOLOMON CAPITAL 401(k)
TRUST,
                          Plaintiff,


  -against-
                                                              ECF CASE
MARCUS S. BUTLER and MSB GROUP
INCORPORATED,

                          Defendant,

-----------------------------------------------------------x



## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S

## RULE 15 MOTION TO AMEND COMPLAINT

# TABLE OF CONTENTS

TABLE OF CONTENTS ............................................................................................... 2

TABLE OF AUTHORITIES ....................................................................................... 3

PROCEDURAL BACKGROUND ............................................................................. 4

FACTUAL BACKGROUND OF EVENTS SUPPORTING PLAINTIFFS' MOTION TO AMEND THE COMPLAINT ....................................................................................... 6

RELATED FACTS PRECEDING BUTLER I ........................................................... 6

FACTS UNDERLYING BUTLER I ........................................................................... 7

FACTS UNDERLYING BUTLER II .......................................................................... 8

IN MAY 2013 MR. SHARBAT FINDS OUT THAT HARTSTEIN AND BUTLER HAD ONLY ONE (1) DEAL FOR SHARES FOR SPONGETECH, AND MR. SHARBAT'S FUNDS DELIVERED IN BUTLER I FINANCED BUTLER II .............................................. 9

LEGAL STANDARD ................................................................................................ 15

    I.    PREJUDICE ................................................................................................. 15

    II.    UNDUE DELAY ........................................................................................ 16

    III.    AMENDMENT TIMELINESS ................................................................. 17

    IV.    AMENDED COMPLAINT STATES LEGALLY COGNIZABLE CLAIMS ................ 18

    a.    PLAINTIFFS CAN STATE VALID CLAIMS FOR VIOLATIONS OF SECTION 10(B) 15 U.S.C. § 78J(B) AND RULE 10B-5 PROMULGATED THEREUNDER AS WELL AS A BREACH OF FIDUCIARY DUTY BY HARTSTEIN. ........................................... 18

    b.    PLAINTIFFS CAN ALSO STATE A VALID CLAIM FOR COMMON LAW FRAUD 20

    c.    PLAINTIFF CAN STATE A VALID CLAIM FOR FRAUDULENT CONVEYANCE. 21

    d.    PLAINTIFFS CAN STATE A VALID CLAIM FOR CONVERSION ........................... 21

    e.    PLAINTIFFS CAN STATE A VALID CLAIM FOR UNJUST ENRICHMENT .......... 22

    V.    THE COURT HAS SUBJECT MATTER JURISDICTION OVER THE AMENDED CLAIMS ....................................................................................................... 22

CONCLUSION ......................................................................................................... 23

# TABLE OF AUTHORITIES

**Cases**

Abu Dhabi Commercial Bank v. Morgan Stanley & Co., 651 F. Supp. 2d 155 (S.D.N.Y. 2009) 20

AEP Energy Servs. Gas Holding Co. v. Bank of Am., N.A., 626 F.3d 699 (2d Cir. 2010) ... 15, 18

AIG Global Sec. Lending Corp. v. Banc of Am. Sec, LLC, No. 01 Civ 11448, 2005 WL 2385854, at *16 (S.D.N.Y. Sept. 25, 2005) ...................................................................... 19, 20

Archibald v. City of Hartford, 274 FRD 371, 377 (D. Conn. 2011)........................................ 16

Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009)..................................................................... 18

Bancorp v. FDIC, 375 F.3d 196, 203 n. 8 (2d Cir.2004) ....................................................... 22

Block v. First Blood Assocs., 988 F.2d 344, 350 (2d Cir.1993).............................................. 15

Byrd v. Abate, 964 F. Supp. 140, 145-46 (S.D.N.Y. 1997)..................................................... 16

City of New York v. Group Health Incorporated, 2011 WL 3625097 (2d Cir. 2011) ................ 18

Dodson v. New York Times Co., 1998 WL 702277 (S.D.N.Y. 1998)....................................... 15

Feliciano v. County of Suffolk, No. CV 04-5321 (JS)(AKT) (E.D.N.Y. Mar. 28, 2013) ............ 16

Frenkel v. New York City Off-Track Betting Corp., 611 F. Supp. 2d 391 (S.D.N.Y. 2009)....... 18

Giordano v. Thomson, 564 F.3d 163 (2d Cir. 2009) .............................................................. 22

In re Blech Sec. Litig., 961 F.Supp. 569, 584 (S.D.N.Y.1997) ............................................... 19

Kirschner v. Bennett, 648 F.Supp.2d 525, 540 (S.D.N.Y. 2009) ........................................... 21

Merck & Co. v. Reynolds, 130 S. Ct. 1784 (2010)................................................................. 17

Morales v. County of Suffolk, No. 10-CV-03686 (ADS)(ARL) (E.D.N.Y. July 6, 2013) .......... 16

Novak v. Kazaks, 216 F.3d 300, 308 (2d Cir. 2000) .............................................................. 20

Sissel v. Rehwaldt, No. 12-952-cv (2d Cir. June 3, 2013) ..................................................... 17

Smith v. Westchester County, 769 F.Supp.2d 448 (S.D.N.Y. 2011)........................................ 18

State Teachers Ret. Bd. v. Fluor Corp., 654 F.2d 843, 856 (2d Cir.1981) .............................. 15

Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc., 128 S.Ct. 761 (2008) ..................... 19

Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308,319 (2007) ................................. 20

Williams v. City of New York, 690 F. Supp. 2d 338, 344 (S.D.N.Y. 2010)............................... 17

**Statutes**

15 U.S.C. § 78j(b) ............................................................................................................... 18

15 U.S.C. § 78-u4(b)(2) ....................................................................................................... 20

17 C.F.R. § 240.10(b)-5 ......................................................................................................... 4

17 C.F.R. § 240.10(b)-5. ...................................................................................................... 22

28 U.S.C. § 1331 ................................................................................................................. 22

28 U.S.C. § 1332 ................................................................................................................... 4

28 U.S.C. § 1367 ................................................................................................................. 22

28 U.S.C. § 1391 (b) ........................................................................................................... 22

28 U.S.C. § 1658(b) ............................................................................................................. 17

Fed.R.Civ.P. 15 .............................................................................................................. 15, 17

N.Y. Debt. & Cred. Law § 273 .............................................................................................. 21

1.      Plaintiffs, by and through their attorney, Steven A. Feldman, Esq., submits the following under the penalty of Perjury and upon the annexed documents and affidavits the as his memorandum of law in support of his motion for leave to amend their Complaint to (a) add additional defendants (i) MSB GROUP Incorporated, a Delaware entity (ii) Mr. Michael Hartstein, a citizen of New York and (ii) Mr. Barry Honig, a citizen of Florida; and (b) to add additional causes of action under against all defendants under (i) Section 10(b) of the Securities and Exchange Act ("the Exchange Act"), Title 15 U.S.C. § 78(b), and (ii) Rule 10b-5 promulgated thereunder ("Rule 10b-5"); as well as (iii) common law fraud (iv) fraudulent conveyance and (c) to apply the causes of action in the original complaint against the additional defendants for (i) common law breach of contract (ii) unjust enrichment (iii) conversion, and (iv) piercing the corporate veil. The court has subject matter jurisdiction over the original cause of action pursuant to 28 U.S.C. § 1332 because there was complete diversity among the parties when the action was instituted, and the amount in controversy exceeds $75,000. The court has subject matter Jurisdiction over the amended complaint as the suit as amended arose, in substantial part, under § 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10(b)-5. This motion is brought pursuant to the court conference held on November 25, 2013.

## PROCEDURAL BACKGROUND

2.      Plaintiff filed a Complaint on or about August 30, 2010. (Annexed hereto as Exhibit A). An amended complaint was filed on or about September 16, 2010. (Annexed hereto as Exhibit B). Defendants filed an answer to the amended complaint on or about November 30, 2010. (Annexed hereto as Exhibit C).

3.      On July 15, 2011, the Honorable Judge Shira A. Scheindlin issued an ORDER OF DEFAULT against the Defendant MSB GROUP Incorporated for failure to defend and for Plaintiffs to recover from Defendant MSB GROUP Incorporated the sum of $460,000.00, together with attorneys' fees in the amount of $2,000.00.

4.      By an order dated December 23, 2011, counsel for Plaintiff Scott Lloyd Fenstermaker withdrew and substituted by Simon Schwarz.

5.      With regard to Defendant Marcus S. Butler ("Butler") on February 8, 2012, counsel for Butler, David C. Birdoff moved to withdraw, and on March 9, 2012, the Honorable Judge Shira A. Scheindlin granted Mr. Birdoff's request to be relieved.

6.      In his motion to be relieved Mr. Birdoff' indicated that Mr. Schwarz had not contacted him and aptly characterized the status of the instant action as "Embryonic" where "No meaningful discovery has occurred or is scheduled." Mr. Birdoff also indicated that Mr. Butler refused to comply with his attempts to comply with discovery requests, and no discovery requests were complied with by Butler.

7.      On March 9, 2012, the very same day Mr. Birdoff's request to be relieved was granted, a Criminal Complaint was filed in the United States District Court for the District of New Jersey against Butler. On June 13, 2012, Butler was *inter alia* sentenced to five (5) years in prison.

8.      At the time of his incarceration, Mr. Butler had yet to comply with any discovery requests, and Plaintiffs have been unable to pursue their suit against Butler due to his incarceration.

9.      To wit Plaintiffs have been without effective assistance of counsel, since before June 17, 2013 when Mr. Schwarz brought suit in an action styled: *United Torah Education Fund et. al. V.*

*Sharbat et. al.* 13 cv 4330 on behalf of a nonprofit he controls against his erstwhile client Mr. Sharbat.

## FACTUAL BACKGROUND OF EVENTS SUPPORTING PLAINTIFFS' MOTION TO AMEND THE COMPLAINT

10.    The complaint brought in the instant suit, was predicated on a diversity suit based primarily on state and common law claims resulting from a transaction in which Defendant Marcus S. Butler ("Butler") and his Entity MSB GROUP INCORPORATED ("MSB GROUP (NJ)") failed to deliver shares of SpongeTech Delivery Systems Inc. ("SpongeTech" or "SPNG") now a defunct entity, purchased by Mr. Sharbat in the amount of $600,000 ("Butler I").

## RELATED FACTS PRECEDING BUTLER I

11.    In the months of June and July 2009, Mr. Sharbat engaged in the purchase and sale of various securities of publicly traded, stock including SpongeTech.

12.    On July 20, 2009, Mr. Sharbat entered into a deal with Michael (Moshe) S. Hartstein ("Hartstein"). Hartstein is a broker dealer, a member of the Financial Industry Regulatory Authority ("FINRA"), and a provider of investment advisory services. Hartstein is an affiliate and director of the investment advisor, Palladium Capital Advisors, LLC ("Palladium"). Palladium is a Delaware limited liability company, a broker-dealer, and a member of FINRA. See Hartstein's Finra BrokerCheck report as of September 9, 2013 annexed hereto as Exhibit "D".

13.    During that time, Hartstein, as a licensed broker, entered into an agreement whereby he was to purchase shares of SPNG in partnership with Mr. Sharbat, where Hartstein provided financing in the amount of $250,000. However, after the funds were delivered, Hartstein reneged

on the deal and demanded the return of the funds invested in the deal. At that time, Mr. Sharbat was only able to give Hartstein $135,000, but had a remaining $115,000 on demand from Hartstein.

14.     At the same time, Joel Schreiber entered into a similar deal with Mr. Sharbat, providing financing in the amount of $200,000, but demanded his expected profits in the amount of $256,000, after the funds were delivered, but before Mr. Sharbat received the securities.

### FACTS UNDERLYING BUTLER I

15.     Shortly thereafter, Sharbat informed Hartstein that Butler sought to obtain $600,000 from Mr. Sharbat in connection with a certain business opportunity. The opportunity initially involved the purchase of shares of SpongeTech and Vanity Events Holding, Inc. ("Vanity"). Hartstein knew Butler and was familiar with the terms of the deal. The terms (among others) being: Butler promised that if Mr. Sharbat provided the $600,000 to his company MSB GROUP (NJ) to purchase SPNG and/or Vanity shares, Mr. Sharbat would be repaid the $600,000 and would be entitled to share in any profits generated from the purchase of the SPNG and Vanity shares (Butler I). It was this transaction i.e. Butler I that formed the basis for original complaint.

16.     In order to meet Hartstein's complete demand for the remaining $115,000 and to facilitate the purchase of the $600,000 in securities from Butler, Mr. Sharbat, with the assistance of Hartstein as Broker arranged for the transfer and sale of 5,000,000 Shares of SPNG. In fact, Hartstein advised, and strongly encouraged, Mr. Sharbat to provide the $600,000 to Butler, advising that the business opportunity would ultimately be profitable for Mr. Sharbat. Additionally, Hartstein loaned money to Mr. Sharbat secured by the proceeds of (Butler I).

17.     On Monday, August 24, 2009, in the ensuing sale of the 5,000,000 shares of SPNG, Hartstein received $787,500 in proceeds, of which he immediately took a previously undisclosed self-serving 10% commission. In addition to meet Schreiber's demands Mr. Sharbat directed Hartstein to deliver $190,000 of the proceeds from the SPNG sale to Schreiber's entity Waterbridge Capital.

18.     In the course of limited discovery by subpoena issued to Butler's bank accounts and the bank accounts of Defendant MSB GROUP (NJ), it was discovered that Butler withdrew funds in the amount of $470,000 in the form of cashier's checks ($170,000 and $100,000, $100,000 and $100,000). However, due to the lack of cooperation in discovery from Butler and Defendant MSB GROUP (NJ), Mr. Sharbat was unable to discover the beneficiary of the funds.

## FACTS UNDERLYING BUTLER II

19.     In February 2010, prior to instituting this action Hartstein informed Mr. Sharbat that he too lost money to Butler. Mr. Sharbat, entertained bringing suit against Butler with the assistance of Hartstein.

20.     In May 2010, Hartstein disclosed a transaction entered into simultaneously with Butler I, in which Butler, Hartstein and Barry Honig ("Honig"), entered into a Stock Purchase agreement, (Annexed hereto as Exhibit "E") pursuant to which Hartstein and Honig created a Delaware Entity named MSB GROUP INCORPORATED, into which Butler, also as Personal Garantor of the delivery through MSB GROUP INCPORATED (NJ) was to deliver 20,000,000 Shares of SPNG to MSB GROUP INCORPORATED (DE) and in exchange Hartstein and Honig through MSB GROUP INCORPORATED DELAWARE were to Deliver $1,600,000 to an  undisclosed

entity ("Butler II"). At that time Mr. Sharbat was unaware of the use of his funds in Butler I to fund Butler II.

### IN MAY 2013 MR. SHARBAT FINDS OUT THAT HARTSTEIN AND BUTLER HAD ONLY ONE (1) DEAL FOR SHARES FOR SPONGETECH, AND MR. SHARBAT'S FUNDS DELIVERED IN BUTLER I FINANCED BUTLER II

21.     Mr. Steven Moskowitz was a former officer and director of RM Enterprises, an affiliate of SpongeTech, holder of SPNG shares, and from whom the shares in Butler I and Butler II were now understood to have to be purchased.

22.     In May 2013, while corresponding with Mr. Moskowitz, Mr. Sharbat was informed that in August 2009, preceding Mr. Sharbat's own arrangement with Butler, Mr. Moskowitz entered into an agreement with Butler and Hartstein as broker, to provide 20,000,000 shares of SPNG in exchange for payment of same. In fact, this was the only deal Butler and Hartstein had for SPNG with Mr. Moskowitz.

23.     Additionally, Mr. Moskowitz disclosed that when Butler and Hartstein provided the initial funding for the 20,000,000 shares on Monday, August 24, 2009 Butler issued a check from his MSB GROUP (NJ) account in the amount of $500,000 with a memo "SPNG", which was returned for insufficient funds on August 25, 2009.  See return check annexed hereto as Exhibit "F". Mr. Moskowitz, however, on the basis of the bounced check, released the first tranche of SPNG shares to Hartstein and Butler's MSB GROUP's Blue Trading Brokerage Account.  As discussed below, the beneficiary of those shares were Hartstein Butler and Honig and perhaps others, but not Mr. Sharbat.[1]

---

[1] At that point Mr. Sharbat also found out that the funds for the July 20, 2013 deal with Hartstein also came from Mr. Barry Honig's account. See page 3 and 4 of the Moskowitz Affidavit annexed hereto as Exhibit "G".

24.     Accordingly, on August 26, 2009 and August 27, 2009, unbeknownst to Mr. Sharbat, when Butler received the funds from Mr. Sharbat, Butler and Hartstein already defaulted on obligations to Mr. Moskowitz and therefore were unable to deliver shares paid for by Mr. Sharbat. Butler, nonetheless, took the money.

25.     Mr. Moskowitz further disclosed that as a result of the bounced check, Mr. Moskowitz put a hold on the release of the shares until good funds were delivered. In September 2009, Linette Marinus, Mr. Honig's secretary, emailed Mr. Moskowitz and provided corporate documents indicating that Mr. Honig owned and/or controlled MSB GROUP Incorporated (DE). However this entity incorporated in the State of Delaware.  See affidavit of Steven Y. Moskowitz annexed hereto as Exhibit "G" ("Moskowitz Affidavit"). Mr. Moskowitz indicated that he believed that there were two MSB GROUP's "controlled by Marcus Butler and/ or Michael Hartstein. Separately, there was an "MSB GROUP" controlled by Barry Honig." Moskowitz Affidavit Exhibit "G" Page 2 and Pages 18-28 therein.

26.     As disclosed in my correspondence with Mr. Moskowitz, in September 2009, MSB GROUP (DE), in fact, delivered $500,000 to Mr. Moskowitz and Mr. Moskowitz released the hold on the representative shares in the Blue Trading brokerage account. Mr. Sharbat, however, did not receive any of those shares and did not know that such shares were in fact released until he was informed of same in my own correspondence with Mr. Moskowitz.

27.     Based on email correspondence and wire transfers provided by Mr. Moskowitz, between Mr. Hartstein and Honig and the information from banking transactions discovered by subpoena of Mr. Butler's personal and MSB GROUP (NJ) bank accounts, a pattern of activity between Hartstein, Honig and Butler appears to show that the funds provided by Mr. Sharbat to finance

Butler I, were used by Butler, Hartstein and Honig to finance the purchase of SPNG securities in Butler II.

28.     The following chart illustrates the successive series of transactions under which Mr. Sharbat was defrauded of his funds to support Hartstein, Honig and Butlers Purchase of SPNG Shares for $1,600,000 in Butler II:

| Date | Transaction Description | Butler I Funds | Butler II Funds |
|---|---|---|---|
| Tuesday, August 25, 2009 | Sharbat wire to Butler | $          380,000.00 | |
| Wednesday, August 26, 2009 | Butler Counter Debit | | $          300,000.00 |
| Thursday, August 27, 2009 | Hartstein (Sharbat loan) wire to Butler | $          220,000.00 | |
| Thursday, August 27, 2009 | Butler Counter Debit | | $          170,000.00 |
| Friday, August 28, 2009 | Honig to Hartstein personal | | $          300,000.00 |
| Monday, August 31, 2009 | Honig to Hartstein personal/MSB | | $          850,000.00 |
| Wednesday, September 02, 2009 | MSB (DE) to MBE (Moskowitz / SPNG) | | $      (1,600,000.00) |
| | | $          600,000.00 | $            20,000.00 |

29.     First, based on the information obtained through the Subpoena of records from Butler's MSB GROUP (NJ) Bank of America account, Mr. Butler received a total of $600,000 from Mr. Sharbat in two successive transactions; (i) $380,000 on Tuesday August 25, 2009 and (ii) $220,000 on Thursday, August 27, 2009. See MSB GROUP (NJ) Bank of America August 2009 subpoenaed Bank Records, annexed hereto as Exhibit "H". The $600,000 were delivered pursuant to Butler's agreement with Mr. Sharbat to purchase free trading shares of SPNG in said amount. After each deposit was made, Butler immediately withdrew $470,000 in the form of Bank of America cashier's checks (i) $300,000 on Wednesday August 26, 2009 and (ii) $170,000 on Thursday August 27, 2009. Id. Each check was countersigned by Mr. Butler and deposited in his Personal TD Bank Account in September 2009. Former counsel for Mr. Sharbat, however, was unable to obtain the records of said bank account for that period of time. When attempting to gather further information via discovery and contacting Butler directly via email,

Mr. Butler withheld the information responding on August 20, 2011: "The money that I earned in my business is what I was referring to having NOTHING to do with your baseless allegations."  See August 20, 2011 Email annexed hereto as Exhibit "I".

30.     Second, the emails and wire records provided by Mr. Moskowitz show that Mr. Honig provided a total of $1,150,000 to Mr. Hartstein, in two (2) successive transactions; (i) $300,000 on Friday August, 28, 2009 and (ii) $850,000 on Monday August 31, 2009. See wire transaction records annexed to the Moskowitz Affidavit Exhibit "G" pages 11-15 [2] The emails show that these wire transactions were made pursuant to email correspondence between Hartstein and Honig, for Honig to wire the funds to the "New" MSB GROUP [i.e. MSB GROUP (DE)] account or Hartstein's Personal Account in Bank of America. Id, page 13. [3]

31.     Indeed the $470,000 from Butler I, together with the Honig amount of $1,150,000, equals a total of $1,620,000 or just $20,000 more than required under the agreement between MSB NJ

---

[2] Barry Honig and Mr. Sharbat had prior business dealings in 2008 in connection with Money for Gold ("MFGD") and Perf Go Green ("PGOG"), in which Honig demanded a PR fee in the amount of $400,000, 2/3rds of which or $269,072.33 were according to industry practice to be paid to Sam Del Presto's and his affiliate Whalehaven. On the same wire transaction record as the $850,000 transferred to Hartstein/MSB for Butler II, Honig transferred $269,072.33 to Whalehaven with a note "MFGD." It is the intent through this amended cause of action to prove that Mr. Honig intended to defraud Mr. Sharbat in part to obtain in part the fees for Whalehaven he demanded in 2008. See, August 31, 2009 Bank of America Wire Transfer Record annexed to the Moskowitz Affidavit Exhibit "G" Page 15.

[3] From that email (Moskowitz Affidavit Exhibit "G" page 13) alone it is clear that Hartstein failed to separate MSB GROUP (DE) corporate funds/transactions, allowing such funds to be commingled with his personal funds.

and MSB DE.[4] In fact, on September 2, 2009, MSB GROUP INCORPORATED as remitter purchased three (3) cashier's checks (No. 2108037, 2108038, 2108039) in the total amount of $1,600,000 to be paid to the order of RM ENTERPRISES INC, a name similar to Mr. Moskowitz's entity "RM ENTERPRISES INTERNATIONAL LTD". See copies of checks provided by Hartstein on May 2, 2010 annexed hereto as Exhibit "J".

32.     Although Bank of America records of MSB GROUP (NJ) subpoenaed by Mr. Sharbat do not show that any checks were purchased by them through its accounts. Upon information and belief, it is apparent that the $1,600,000 cashier's checks purchased by MSB GROUP INCORPORATED on September 2, 2009 came from funds in the account of MSB GROUP (DE) controlled by Hartstein and Honig from the funds received by from Butler from Sharbat pursuant to the agreement in Butler I.

33.     Moreover, after contacting Bank of America's Official Items Department, I was informed that the checks were paid and processed on the next day September 3, 2009. However Mr. Moskowitz informed me that neither he nor RM ENTERPRISES INTERNATIONAL LTD ever received such checks from MSB GROUP INCORPORATED during said period of time. Further in order for those checks to have been processed on September 3, 2009 the Remitter MSB GROUP INCORPORATED must have re-deposited said checks it into their account, or another entity with the name of RM ENTERPRISES INC must have received and deposited those

---

[4] Incredibly, on August 28, 2013 Mr. Hartstein sent Mr. Sharbat an email indicating Mr. Shabat "owed" Hartstein $20,000: "This is to confirm that [Sharbat] owe [Hatstein] 600,000 Shares of SPNG and $20,000"

checks. In any event, neither the account of MSB GROUP (NJ) nor the account of RM ENTERPRISES INTERNATIONAL LTD received the checks.[5]

34.     Based on the documents provided by Mr. Moskowitz in his affidavit, it is clear that Hartstein and Honig were in control of MSB GROUP (DE) during the period of these transactions.

35.     Indeed the shares delivered to Butler and Hartenstein were ultimately delivered to MSB DE i.e. Hartstein and Honig, who retained the shares for themselves to the exclusion of Mr. Sharbat.

36.     Without Mr. Moskowitz's Affidavit and Emails, Mr. Sharbat had no indication as to where the $600,000 funds went as they could not be traced  with certainty once removed from his MSB GROUP (NJ) account to any of Butler's personal accounts. Prior to the disclosure of Mr. Moskowitz, Mr. Sharbat was only aware that $470,000 was removed from MSB GROUP NJ. Mr. Moskowitz disclosures provide the necessary link to make Mr. Sharbat's claims against MSB GROUP DE, Mr. Hartstein and Butler facially plausible.

---

[5] It is worth noting, that an incoming wire deposit in the amount of $1,599,975.00 was deposited into Mr. Butler's MSB GROUP (NJ) account on the same day the Cashier's Checks were purchased by MSB GROUP INCORPORATED (DE) in the amount of $1,600,000. The $1,599,975.00 originated from Midos Services Ltd ID:40051559160864, located at 147 Stamford Hill London N16 5LG, UK which upon information and belief is owned and controlled by Mr. Joel Schreiber's close family members - Rivka (Schreiber) Niederman - Secretary, Irene Schreiber - Secretary; David Schreiber – Director. See Corporate Documents annexed hereto as Exhibit "K" At the time Mr. Schreiber was also interested in the purchase of shares of various entities including SPNG, and in fact owed money to Mr. Sharbat in connection with Mr. Sharbat's financing of the purchase of SPNG shares in August. Additionally, Midos Services Ltd. FY June 30 2010 Balance Sheet shows £891,616 which at the exchange rate of 1.65 in 2009 was $1,471,166.40 in loses $128,808 short of what he sent to Butler's MSB GROUP (NJ).

## LEGAL STANDARD

37.     Rule 15 of the Federal Rules of Civil Procedure provides that leave to amend the pleadings should be "freely give[n] ... when justice so requires." Fed.R.Civ.P. 15(a)(2). "The rule in this Circuit has been to allow a party to amend its pleadings in the absence of a showing by the nonmovant of prejudice or bad faith." AEP Energy Servs. Gas Holding Co. v. Bank of Am., N.A., 626 F.3d 699 (2d Cir. 2010) *Citing* Block v. First Blood Assocs., 988 F.2d 344, 350 (2d Cir.1993). Denial has also been deemed proper when it (1) has been delayed unduly, (2) is sought for dilatory purposes or is made in bad faith, (3) would prejudice the opposing party, or (4) would be futile. *See*, Dodson v. New York Times Co., 1998 WL 702277 (S.D.N.Y.), *Citing* Foman v. Davis, 371 U.S. 178, 182 (1962). Since no such criteria exist in this case, leave should be granted. Further [i]f the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits

### I.   PREJUDICE

38.     The second circuit has referred to the prejudice to the opposing party resulting from a proposed amendment as among the "most important" reasons to deny leave to amend. *See* AEP, Id, *Citing* State Teachers Ret. Bd. v. Fluor Corp., 654 F.2d 843, 856 (2d Cir.1981).  An amendment may be prejudicial when it would (i) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; (ii) significantly delay the resolution of the dispute; or (iii) prevent the Plaintiff from bringing a timely action in another jurisdiction.

39.     Since this matter has not entered the discovery phase and the additional parties have not yet expended any resources the further amplification or elucidation of those matters set forth in the amended complaint and their appurtenant facts cannot in good faith be said to require the opponent to expend any additional resources to conduct discovery and prepare for trial. Therefore there is no prejudice.

## II.     UNDUE DELAY

40.     Here, the amendment has not been delayed unduly, first, the information recently discovered only partially came to light less than 5 months ago when Mr. Moscowitz disclosed the aforementioned emails and wire transfers between Hartstein Honig and their control of MSB GROUP (DE) . Further, Mr. Sharbat was not effectively represented by counsel at the time of the discovery, and was only uncovered when current counsel analyzed the transactions in the wires recently provided by Mr. Moscowitz as compared with the emails along with the subpoenaed documents obtained by Mr. Sharbat's initial counsel Mr. Fenstrermaker.

41.     Where defendants have withheld information or unreasonably delayed in producing discoverable information, courts have granted leave to amend. See, Feliciano v. County of Suffolk, No. CV 04-5321 (JS)(AKT) (E.D.N.Y. Mar. 28, 2013) and Morales v. County of Suffolk, No. 10-CV-03686 (ADS)(ARL) (E.D.N.Y. July 6, 2013) citing Archibald v. City of Hartford, 274 FRD 371, 377 (D. Conn. 2011) and Byrd v. Abate, 964 F. Supp. 140, 145-46 (S.D.N.Y. 1997). In the instant matter, defendant refused to engage in any meaningful discovery, and failed to produce any meaningful information, even refusing to communicate with his own counsel. To the extent Plaintiff successfully obtained information, such information was limited to plaintiff's own independent investigation and the subpoena of third parties.

### III.    AMENDMENT TIMELINESS

42.    Under Rule 15 of the Federal Rules of Civil Procedure, an amended pleading "relates back to the date of the original pleading when ... the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." Fed.R.Civ.P. 15., <u>Williams v. City of New York</u>, 690 F. Supp. 2d 338, 344 (S.D.N.Y. 2010).

43.    Plaintiff noticed his intention herein to amend the complaint at the first conference immediately after being retained. A complaint alleging a federal securities fraud claim is timely if filed no more than "2 years after the discovery of the facts constituting the violation" or 5 years after the violation. 28 U.S.C. § 1658(b). <u>Sissel v. Rehwaldt</u>, No. 12-952-cv (2d Cir. June 3, 2013). Citing reliance on <u>Dodds v. Cigna Securities Inc.</u>,12 F.3d 346 (2d Cir. 1993), and <u>Staehr v. Hartford Financial Services Group, Inc.</u>, 547 F.3d 406 (2d Cir. 2008).

44.    Recently, the Second Circuit in <u>Sissel v. Rehwaldt</u>, No. 12-952-cv (2d Cir. June 3, 2013) citing the Supreme court decision in <u>Merck & Co. v. Reynolds</u>, 130 S. Ct. 1784 (2010), that § 10(b)'s "limitations period does not begin to run until . . . a reasonably diligent plaintiff would have discovered `the facts constituting the violation,' including scienter," id. at 1798 (quoting 28 U.S.C. § 1658(b)). It observed that "terms such as `inquiry notice' and `storm warnings' may be useful to the extent" they connote the point in time when a reasonably diligent plaintiff would begin investigating the possibility of fraud. Id. Nevertheless, it is the point at which a violation is or would have been discovered that triggers the limitations period.

45.    Here, Plaintiff's were both prevented from ascertaining the true nature and source of the fraud committed by Butler, Hartstein, Honig and MSB GROUP (DE). Further to the extent plaintiff knew certain transactions took place, plaintiff was unaware of Butler, Hartstein and

Honig's use of MSB GROUP (DE) and other entities as an artifice to commit fraud.  Plaintiff until May 2013 had no information indicating that Mr. Hartstein and Honig were involved with butler in the fraud and in fact were prevented by Butler, Hartstein and Honig's failure to disclose and from discovering same. Nevertheless Plaintiffs included the operative facts of Butler I underlying Butler II in the initial and amended complaint.

## IV.    AMENDED COMPLAINT STATES LEGALLY COGNIZABLE CLAIMS

46.    At the pleading stage, leave to amend cannot be denied on the grounds of futility so long as the proposed amendment states a legally cognizable claim.  *See*, Smith v. Westchester County, 769 F.Supp.2d 448 (S.D.N.Y. 2011); *Citing* Krosmico v. JP Morgan Chase & Co, 2006 WL 3050869, at *3 (E.D.N.Y. 2006) ; *See also*, City of New York v. Group Health Incorporated, 2011 WL 3625097 (2d Cir. 2011), *Citing* AEP Energy Servs. Gas Holding Co. v. Bank of Am., N.A., 626 F.3d 699, 725 (2d Cir. 2010). *See also,* Frenkel v. New York City Off-Track Betting Corp., 611 F. Supp. 2d 391, (S.D.N.Y. 2009).

47.    "A claim has facial plausibility where the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009).

> **a.  PLAINTIFFS CAN STATE VALID CLAIMS FOR VIOLATIONS OF SECTION 10(B) 15 U.S.C. § 78J(B) AND RULE 10B-5 PROMULGATED THEREUNDER AS WELL AS A BREACH OF FIDUCIARY DUTY BY HARTSTEIN.**

48.    In order to state a private action brought pursuant to Section 10b and Rule 10b-5 In a § 10(b) private action "a plaintiff must prove (1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic

loss; and (6) loss causation." Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc., 128 S.Ct. 761 (2008), See also, AIG Global Sec. Lending Corp. v. Banc of Am. Sec, LLC, No. 01 Civ 11448, 2005 WL 2385854, at *16 (S.D.N.Y. Sept. 25, 2005)

49.     Here, Mr. Hartstein failed to disclose the interest he had in Butler II at the time Mr. Sharbat entered into the transaction for Butler I. Hartstein also failed to disclose his pecuniary interest in the Butler I or II transaction. Moreover, Hartstein failed to disclose that he in fact was a beneficiary of the proceeds of the funds delivered by Mr. Sharbat to Butler. That in fact Hartstein received securities from the funds delivered from butler, and/or profited from the undisclosed transaction to the detriment of Mr. Sharbat. Mr. Sharbat relied for years upon said misrepresentations and was therefore unable to determine the source of the fraud or determine the beneficiary of the funds fraudulently transferred by Butler. Mr. Sharbat accordingly lost both the expected profit from the sale of those securities as well as the benefit of the principal $600,000 investment.

50.     Moreover, although for purposes of liability for breach of a fiduciary duty, "A clearing broker does not provide `substantial assistance' to or `participate' in a fraud when it merely clears trades." In re Blech Sec. Litig., 961 F.Supp. 569, 584 (S.D.N.Y.1997) Here, Hartstein was no *mere clearing broker*, in fact Hartstein and Honig effectively assumed direct control of Butler's manipulative scheme, when he created MSB GROUP (DE) and attempted to take full control of the Butler deals. See, Moskowitz Affidavit Exhibit "G" Page 2 and Pages 18-28 therein

51.     Further, as disclosed by Mr. Moskowitz, Mr. Hartstien's refusal to take the necessary precautions as broker in securing the funds delivered by Mr. Sharbat to Butler, and failing thereafter to return the funds in fact received from the sale of shares intended for Mr. Sharbat is a clear case of scienter. In the context of securities fraud statutes, scienter "means intent to

deceive, manipulate, or defraud, or at least knowing misconduct. Scienter may be inferred from proof of "facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness" or from proof that a defendant had "both motive and opportunity to commit fraud. An "egregious refusal to see the obvious, or to investigate the doubtful, may in some cases give rise to an inference of . . . recklessness." See, AIG Global Sec. Lending Corp. Id, citing Novak v. Kazaks, 216 F.3d 300, 308 (2d Cir. 2000).

52.     The newly uncovered facts now provide the "strong inference" that each defendant, Hartstein, Honig and Butler acted with scienter, using their MSB GROUP (DE) entity with a "mental state embracing intent to deceive, manipulate, or defraud." 15 U.S.C. § 78-u4(b)(2); Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308,319 (2007).

### b.  PLAINTIFFS CAN ALSO STATE A VALID CLAIM FOR COMMON LAW FRAUD

53.     Under New York law, to state a claim for fraud a plaintiff must demonstrate: (1) a misrepresentation or omission of material fact; (2) which the defendant knew to be false; (3) which the defendant made with the intention of inducing reliance; (4) upon which the plaintiff reasonably relied; and (5) which caused injury to the plaintiff. Because the elements of common law fraud under New York law are substantially identical to those governing Section 10(b), an identical analysis applies. Abu Dhabi Commercial Bank v. Morgan Stanley & Co., 651 F. Supp. 2d 155 (S.D.N.Y. 2009) citing AIG Global Sec. Lending Corp. v. Banc of Am. Sec. LLC, No. 01 Civ 11448, 2005 WL 2385854, at *16 (S.D.N.Y. Sept. 25, 2005) (citation and quotation marks omitted).

### c.  PLAINTIFF CAN STATE A VALID CLAIM FOR FRAUDULENT CONVEYANCE.

54.    Under New York law, a debtor may be liable for constructive fraudulent conveyance regardless of intent if a transfer was made without "fair consideration" and the debtor "is or will be thereby rendered insolvent." N.Y. Debt. & Cred. Law § 273. Even if there is fair consideration, intentional fraudulent conveyance may exist if the conveyance was made "with actual intent . . . to hinder, delay, or defraud either present or future creditors." Id. § 276.

55.    Here, Hartstein, Butler MSB GROUP (DE) and Honig secreted funds and or securities from MSB GROUP (NJ) and MSB GROUP (DE) and Butler were debtor's in their obligation to Mr. Sharbat, and by secreting those funds made the entities insolvent, retained the profits of their various transactions to themselves, and knowingly excluded Mr. Sharbat from both the return on his investment, and/or his *pro rata* share of the profits. Here, Hartstein, Butler and Honig using MSB GROUP (DE) and other artifices, set forth an impermissible preference for themselves to the exclusion of Mr. Butler who was entitled to said shares, monies or profits.

### d.  PLAINTIFFS CAN STATE A VALID CLAIM FOR CONVERSION

56.    Under New York law, to establish a claim for conversion, a plaintiff must allege: `(1) the property subject to conversion is a specific identifiable thing; (2) plaintiff had ownership, possession or control over the property before its conversion; and (3) defendant exercised an unauthorized dominion over the thing in question, to the alteration of its condition or to the exclusion of the plaintiffs rights.'" Kirschner v. Bennett, 648 F.Supp.2d 525, 540 (S.D.N.Y. 2009). Here Plaintiff's $600,000 delivered to Butler Hartstein and Honig belonged to Mr. Sharbat and the funds once removed from the MSB GROUP (NJ) bank account were used for their own purposes.

### e.   PLAINTIFFS CAN STATE A VALID CLAIM FOR UNJUST ENRICHMENT

57.     As stated by the Second Circuit "[u]nder New York law, a plaintiff asserting a claim of unjust enrichment must show that the defendant was enriched at the plaintiff's expense and that equity and good conscience require the plaintiff to recover the enrichment from the defendant." Golden Pac. Giordano v. Thomson, 564 F.3d 163 (2d Cir. 2009) citing Bancorp v. FDIC, 375 F.3d 196, 203 n. 8 (2d Cir.2004).  Here as illustrated above, Butler, Hartstein, Honig and MSB GROUP (DE) were enriched by the receipt of money or securities with the Money provided by Plaintiffs. Equity and good conscience require that Mr. Sharbat and Plaintiffs be allowed to amend their complaint to have an opportunity recover from Butler, Hartstein, Honig and MSB GROUP (DE) who were unjustly enriched at Plaintiffs' expense.

### V.   THE COURT HAS SUBJECT MATTER JURISDICTION OVER THE AMENDED CLAIMS

58.     Jurisdiction in the amended cause of action is specifically conferred on the United States District Court by 28 U.S.C. § 1331. The court has subject matter jurisdiction of the amended claims because the suit as amended arose, in substantial part, under § 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10(b)-5.

59.     This Court has supplemental jurisdiction as conferred by 28 U.S.C. § 1367 as the events, parties, transactions and injuries that form the basis of Plaintiff's Federal claims are identical to the events, parties, transactions and injuries that form the basis of Plaintiff's claims under (i) common law fraud, (ii) conversion, (iii) fraudulent conveyance, and (iv) unjust enrichment.

60.     A substantial portion of the events took place in New York, primarily New York County, where the United States District Court for the Southern District of New York is located. Accordingly venue is proper in this District pursuant to 28 U.S.C. § 1391 (b).

**CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests the Court to grant his motion for leave to amend his Complaint.

Dated: December 6, 2013
       West Hempstead, New York

Respectfully submitted,

_____/s/  Steven A. Feldman_____
STEVEN A. FELDMAN, ESQ. (SF 2921)
Attorney for Plaintiffs
763 Dogwood Ave
West Hempstead, NY 11552
Phone:  (516) 537-8357
Fax:      (516) 213-2415
Our File No.: 2013-500114