UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------- X
                                                        :
SOLOMON SHARBAT,                                        :
SOLOMON CAPITAL, LLC,                                   :
SOLOMON CAPITAL 401(k) TRUST,                           :
SOLOMON SHARBAT, as Trustee of the                      :
SOLOMON CAPITAL 401(k) TRUST,                           :
                                                        :
                        Plaintiffs,                     :
                                                        :     OPINION AND ORDER
              - against -                               :
                                                        :     10 Civ. 6455 (SAS)
MARCUS S. BUTLER and                                    :
MSB GROUP INCORPORATED,                                 :
                                                        :
                                                        :
                        Defendants.                     :
------------------------------------------------------- X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3/21/14

SHIRA A. SCHEINDLIN, U.S.D.J.:

I.    INTRODUCTION

Solomon Sharbat, in his individual capacity and as trustee of the Solomon Capital 401(k) Trust, Solomon Capital LLC, and Solomon Capital 401(k) Trust originally brought claims for breach of contract, unjust enrichment, and conversion against Marcus Butler and MSB Group Inc. ("MSB-NJ"), a New Jersey corporation wholly owned by Butler.[1]  Plaintiffs claimed federal subject matter

---

[1] The Amended Complaint ("Compl.") also asserted "piercing the corporate veil" as a separate claim. *See* Compl. at 9–10.

1

jurisdiction through diversity of citizenship.[2]  On July 15, 2011, the Court entered a default judgment against MSB-NJ in the amount of $462,000.  Plaintiffs also filed a motion for default judgment against Butler, but withdrew the motion after Butler retained counsel.  On March 9, 2012, Butler's counsel withdrew from representation.  On June 13, 2012, Butler was sentenced to sixty-three months in prison and remains incarcerated.

Plaintiffs recently retained new counsel and now move for leave to amend.  The PFAC asserts the original claims for breach of contract, conversion, and unjust enrichment against three new defendants:  Michael Hartstein, Barry Honig, and MSB Group Inc. ("MSB-DE"), a Delaware corporation.  The PFAC also adds new claims for common law fraud, fraudulent conveyance, and Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5 promulgated thereunder.  Plaintiffs assert that the Court has subject matter jurisdiction over the PFAC because "the suit as amended arose, in substantial part, under [section] 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5 promulgated thereunder."[3]  For the reasons set forth below, plaintiffs' motion to amend is denied.

---

[2] *See* Proposed First Amended Complaint ("PFAC") ¶ 1.  The PFAC is the second proposed amendment to the Complaint.  The Amended Complaint was filed on September 16, 2010.

[3] *Id.* ¶ 2.

## II.     FACTUAL BACKGROUND

### A.     The Amended Complaint

According to the allegations in the Amended Complaint, plaintiffs agreed to loan Butler and MSB-NJ $600,000 for the purchase of shares in SpongeTech Delivery Systems, Inc. ("SpongeTech") and Vanity Events Holding, Inc. ("Vanity") from a third party.[4] In return, Butler and MSB-NJ guaranteed that plaintiffs would recover their $600,000 as well as fifty percent of any proceeds from Butler's resale of the shares to third parties.[5] Plaintiffs claim that they gave Butler and MSB-NJ the $600,000 pursuant to the agreement but only received $200,000 worth of SpongeTech and Vanity stock in return.[6]

Hartstein, a licensed broker dealer and investment adviser, facilitated the transaction in exchange for a $60,000 "agency fee" that Butler and MSB-NJ agreed to pay.[7] Hartstein also loaned plaintiffs money to enable them in turn to

---

[4] Although the Amended Complaint does not identify the third party owner of the shares, the PFAC identifies the third party to be Steven Moskowitz. *See* Compl. at 2; PFAC ¶ 31.

[5] *See* Compl. at 3.

[6] *See id.* at 3–4.

[7] *See id.* at 4.  Plaintiffs allegedly owed Hartstein $115,000 from a prior business deal.  *See id.*

3

loan the full $600,000.[8]  Plaintiffs ultimately repaid Hartstein's loan as well as the agency fee, which Butler and MSB-NJ never repaid.[9]  Despite plaintiffs' "timely demand" for the remaining $400,000 and Hartstein's $60,000 agency fee, Butler and MSB-NJ refused to pay.[10]  A default judgment was entered against MSB-NJ in the amount of $462,000, including attorneys' fees and costs.  The claims remain pending against Butler, who is incarcerated.

### B. The PFAC

In May 2013, Sharbat learned that Butler had entered into a Stock Purchase Agreement ("SPA") with Hartstein and Honig prior to Butler's arrangement with plaintiffs.[11]  The SPA required Hartstein and Honig to form a new entity, MSB-DE, and then transfer $1,600,000 from MSB-DE to an

---

[8]  According to the PFAC, Hartstein contributed either $220,000 or $250,000, secured by the proceeds of the stock purchase.  *See* PFAC ¶¶ 29, 45.

[9]  *See id.*

[10]  *Id.*  The PFAC describes the transaction very differently.  It alleges that Hartstein promised plaintiffs he would resell the shares for $980,000, but actually sold them for only $787,500 and then took an unauthorized ten percent commission.  *See id.* ¶¶ 36, 38.

[11]  According to the PFAC, Honig and plaintiffs had prior business dealings in 2008, during which Honig demanded a "PR fee" in the amount of $400,000 that plaintiffs did not pay.  Plaintiffs allege that "Honig intended to defraud [plaintiffs] in part to unlawfully extract and/or obtain unlawful fees [] demanded in 2008."  *Id.* ¶ 47 n.2.

undisclosed entity. The undisclosed entity would then deliver twenty million shares of SpongeTech stock to MSB-DE via MSB-NJ. Butler then contracted with Moskowitz, former officer and director of RM Enterprises, an affiliate of SpongeTech, to purchase twenty million shares of SpongeTech.[12] In sum, plaintiffs allege that defendants Butler, Hartstein, and Honig used plaintiffs' funds to purchase twenty million shares of SpongeTech stock that were ultimately deposited in MSB-DE.[13]

## III. LEGAL STANDARDS

### A. Leave to Amend

Pursuant to Rule 15(a)(2) of the Federal Rules of Civil Procedure, a "court should freely give leave [to amend] when justice so requires." "[W]hether to permit a plaintiff to amend its pleadings is a matter committed to the Court's sound discretion."[14] "This permissive standard is consistent with our strong

---

[12] *See id.* ¶ 31.

[13] *See id.* ¶ 46. Plaintiffs contend that Butler needed their money because a few days earlier, Butler had issued a $500,000 check to Moskowitz that was returned for insufficient funds. They note that Butler withdrew a total of $470,000 from the MSB-NJ account a day after plaintiffs' funds were deposited in that account. *See id.* ¶ 42.

[14] *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007) (internal quotation marks omitted). *Accord Holmes v. Grubman*, 568 F.3d 329, 334 (2d Cir. 2009).

preference for resolving disputes on the merits."[15]  Motions to amend should generally be denied, however, "in instances of futility, undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, or undue prejudice to the non-moving party."[16]  An amendment is futile if the proposed claim could not withstand a motion to dismiss for failure to state a claim or for lack of subject matter jurisdiction under Rule 12(b).[17]

### B.    Failure to State a Claim

For a court to grant leave to amend a complaint, the proposed claim(s) must be able to withstand a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss for "failure to state a claim upon which relief can be granted."  In applying this standard, a court must "accept[ ] all factual allegations in the complaint as true, and draw[ ] all reasonable inferences in the plaintiff's favor."[18]  The court "may

---

[15]   *Williams v. Citigroup Inc.*, 659 F.3d 208, 212–13 (2d Cir. 2011) (internal quotation marks omitted).

[16]   *Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 126 (2d Cir. 2008).  *Accord Ruotolo v. City of New York*, 514 F.3d 184, 191 (2d Cir. 2008).

[17]   *See Donnelly v. United States*, No. 12 Civ. 2438, 2014 WL 128535, at *1 (2d Cir. Jan. 15, 2014); *Lucente v. International Bus. Machs. Corp.*, 310 F.3d 243, 258 (2d Cir. 2002) (citing *Dougherty v. North Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 88 (2d Cir. 2002)).

[18]   *Wilson v. Merrill Lynch & Co.*, 671 F.3d 120, 128 (2d Cir. 2011) (internal quotation marks omitted).

consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint."[19] The court evaluates the sufficiency of the complaint under the "two-pronged approach" suggested by the Supreme Court in *Ashcroft v. Iqbal*.[20] Under the first prong, a court may "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth."[21] For example, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."[22] Under *Iqbal*'s second prong, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."[23] A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

---

[19] *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010).

[20] 556 U.S. 662, 678–79 (2009).

[21] *Id.* at 679.

[22] *Id.* at 678.

[23] *Id.* at 679.

alleged."[24]  "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully."[25]

## IV.   APPLICABLE LAW

Section 10(b) of the Securities Exchange Act of 1934 makes it illegal to "use or employ, in connection with the purchase or sale of any security . . . any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe. . . ."[26]  Under Rule 10b-5, promulgated by the Securities and Exchange Commission under section 10(b), one may not "make any untrue statement of a material fact or [ ] omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading . . . in connection with the purchase or sale of any security."[27]  "To sustain a private claim for securities fraud under section 10(b), a plaintiff must prove (1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance

---

[24]   *Id.* at 678.

[25]   *Id.*

[26]   15 U.S.C. § 78j(b).

[27]   17 C.F.R. § 240.10b–5.

upon the misrepresentation or omission; (5) economic loss; and (6) loss causation."[28]

In order to satisfactorily allege misstatements or omissions of material fact, a complaint must "state with particularity the specific facts in support of [plaintiffs'] belief that [defendants'] statements were false when made."[29]  "[A] fact is to be considered material if there is a substantial likelihood that a reasonable person would consider it important in deciding whether to buy or sell shares [of stock]."[30]  "[A]n omission is actionable when the failure to disclose renders a statement misleading."[31]  Disclosure may also be required "'when one party has information that the other [party] is entitled to know because of a fiduciary or other similar relation[ship] of trust and confidence between them.'"[32]

---

[28]   *Ashland Inc. v. Morgan Stanley & Co., Inc.*, 652 F.3d 333, 337 (2d Cir. 2011) (internal quotation marks omitted).  *Accord Erica P. John Fund, Inc. v. Halliburton Co.*, 131 S.Ct. 2179, 2184 (2011).

[29]   *Rombach v. Chang*, 355 F.3d 164, 172 (2d Cir. 2004) (internal quotation marks omitted).

[30]   *Operating Local 649 Annuity Trust Fund v. Smith Barney Fund Mgmt. LLC*, 595 F.3d 86, 92–93 (2d Cir. 2010) (internal quotation marks omitted).

[31]   *In re Alstom SA*, 406 F. Supp. 2d 433, 453 (S.D.N.Y. 2005) (internal quotation marks omitted).

[32]   *S.E.C. v. Constantin*, 939 F. Supp. 2d 288, 305 (S.D.N.Y. 2013) (quoting *Grandon v. Merrill Lynch & Co., Inc.*, 147 F.3d 184, 189 (2d Cir. 1998)).

## V. DISCUSSION

The only federal claim in the PFAC is a Section 10(b) claim against Butler, Hartstein, and Honig.[33] However, the claim is not plausibly pled against any of the defendants such that it would survive a motion to dismiss.[34] Plaintiffs allege generally that Butler and Hartstein repeatedly made "materially false and misleading statements" to plaintiffs "concerning the availability [of] and ability to purchase shares in [SpongeTech]."[35] However, they do not identify any specific statements made by Butler or Hartstein that were misleading. With respect to Honig, Plaintiffs allege only that Honig "participated in the fraud by . . . aiding and abetting Hartstein and Butler in the creation of [MSB-DE] and providing funding for the underlying fraudulent transactions."[36] Plaintiffs do not allege any direct interactions with Honig at all.

---

[33]   The PFAC originally asserted claims against Hartstein for failure to disclose proper fees in Violation of NASD Conduct Rule 2430, FINRA Rule 2010, and Exchange Act Rule 10b-10. *See* PFAC ¶¶ 113–118. However, those claims were withdrawn by letter to the Court on March 5, 2014. *See* Dkt. No. 75.

[34]   *See* PFAC ¶¶ 59–68.

[35]   *Id.* ¶ 61.

[36]   *Id.* ¶ 64. They argue that Honig "intended to defraud [plaintiffs] in part to unlawfully extract [fees] demanded in 2008." *Id.* ¶ 65.

The few generalized statements in the PFAC fall far short of the particularity required to state a claim under Section 10(b). In the Second Circuit, a securities fraud plaintiff must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent."[37] Plaintiffs do not identify any specific statements made by the defendants, and certainly do not explain why those statements were false or misleading.[38]

Additionally, plaintiffs have not alleged that misleading statements were made "in connection with" the purchase or sale of a security. According to the PFAC, plaintiffs agreed to loan Butler money so that *Butler* could purchase shares of SpongeTech.[39] Plaintiffs did not enter into an agreement for the purchase

---

[37] *Rombach,* 355 F.3d at 170 (quotation marks and citations omitted). *Accord* 15 U.S.C. § 78u–4(b)(1) (requiring securities fraud plaintiffs to "specify each statement alleged to have been misleading, [and] the reason or reasons why the statement is misleading").

[38] *See, e.g., Waterford Twp. Police & Fire Ret. Sys. v. Smithtown Bancorp., Inc.*, No. 10 Civ. 864, 2013 WL 1345086, at *5 (E.D.N.Y. Mar. 29, 2013) (dismissing Section 10(b) claim for failing to explain "how and why each individual [statement] is misleading"); *Tabor v. Bodisen Biotech, Inc.,* 579 F. Supp. 2d 438, 453 (S.D.N.Y. 2008) (noting that "generalized explanations of how the statements were false or misleading are not sufficient" to state a claim under Section 10(b)); *In re Alcatel Sec. Litig.*, 382 F. Supp. 2d 513, 534–35 (S.D.N.Y. 2005) (dismissing claims where "[p]laintiffs neglect to make it clear what portion of each quotation constitutes a false representation").

[39] *See* PFAC ¶ 33.

or sale of stock. Section 10(b) "must not be construed so broadly as to convert every common-law fraud that happens to involve securities into a violation of § 10(b)."[40] In fact, the Supreme Court has only found fraud to be "in connection with" a purchase or sale of a security when it "involved victims who took, who tried to take, who divested themselves of, who tried to divest themselves of, or who maintained an ownership interest in [securities]."[41] Because the PFAC does not plausibly allege Section 10(b) violations that would survive a motion to dismiss, plaintiffs' proposed amendment is futile with respect to the Section 10(b) claims.

The Court originally had diversity jurisdiction over the Amended Complaint because plaintiffs were citizens of New York while Butler and MSB-NJ were citizens of New Jersey.[42] However, Hartstein is a New York resident, and MSB-DE has its principal place of business in New York.[43] Therefore, the addition of Hartstein and MSB-DE in the PFAC destroys diversity jurisdiction.

---

[40] *S.E.C. v. Zandford*, 535 U.S. 813, 820 (2002).

[41] *Chadbourne & Parke LLP v. Troice,* 134 S. Ct. 1058, 1066 (2014) (holding that "[a] fraudulent misrepresentation or omission is not made in connection with [] a purchase or sale of a covered security unless it is material to a decision by one or more individuals (other than the fraudster) to buy or to sell a covered security") (quotation marks and citations omitted).

[42] *See* Compl. at 2.

[43] *See* PFAC ¶¶ 13–15.

Because there is no basis for federal subject matter jurisdiction over the PFAC, leave to amend must be denied.

## VI. CONCLUSION

For the foregoing reasons, plaintiffs' motion to amend is denied. The Clerk of the Court is directed to close this motion [Dkt. No. 71]. A conference is scheduled for April 16, 2014 at 4:30 pm.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated: New York, New York
March 20, 2014

## -Appearances-

**For Plaintiffs:**

Steven A. Feldman, Esq.
763 Dogwood Avenue
West Hempstead, New York 11552
(516) 537-8357

**For Defendant Butler (Pro Se):**

Moshe Butler, Register No. 30250-050
Federal Correctional Institution
P.O. Box 1000
Otisville, NY 10963